IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RANDY ROGMAN, | ) | |
| | ) | |
| Plaintiff, | ) | 4:14CV3101 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM** |
| CAROLYN W. COLVIN, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Randy Rogman brings this action to contest a final administrative decision by the Commissioner of the Social Security Administration ("Commissioner" or "SSA") that he is not entitled to a waiver of recovery of $30,928.90[1] in overpayments for Social Security benefits he received between May 2009 and March 2011. Rogman asserts that the SSA is not entitled to recover these overpayments because he accepted them in reliance on several representations made by SSA representatives, whom he allegedly repeatedly advised of his work circumstances and asked whether he was qualified to continue to receive benefits. For the reasons discussed below, the Commissioner's decision will be affirmed.

### I. BACKGROUND

**A. Factual Background**

After being diagnosed with terminal brain cancer, plaintiff Randy Rogman began receiving Title II benefits in December 2007. (Tr. 514.)[2] Prior to receiving

---

[1]Plaintiff does not challenge the fact or amount of overpayment. (Tr. 916.)

[2]References to "Tr." are to the SSA's transcript of the entire record of proceedings relating to this case. The transcript is not available electronically, but is

those benefits, the SSA advised Rogman that should he receive benefits, he had a duty to report his "return to work . . . regardless of the amount of earnings" and that he could do so by "Calling us TOLL FREE at 1-800-772-1213" or by "Calling, visiting or writing your local Social Security Office at the phone number and address above." (Tr. 191.)

Despite his illness, Rogman returned to work from June 2008 until January 2009 for Cargill Meat Solutions Corporation, Pizza Hut, and Principal Life Insurance Company. (Tr. 13-15.) Rogman began working at Cargill in June 2008 on a reduced schedule of four hours per day upon his doctor's advice that Rogman be sure he could work without having seizures from the brain tumor. Rogman claims that he informed the SSA by telephone when he started working at Cargill and again when he began working for Pizza Hut. (Tr. 921.) The SSA allegedly told him he "would be reviewed" in a year, and he would continue to receive benefits in the meantime. From July to September 2009, after Rogman had been working for a year, he claims he again contacted the SSA and advised them that he was making $2,000 per month at Cargill and $300-$400 per month at Pizza Hut. (Tr. 922.) Rogman allegedly asked the SSA why he was still receiving checks, and the SSA informed him that his case "had been reviewed" and would "be reviewed" again at the end of the year. (Tr. 923.) In another year, Rogman claims he again called the SSA and questioned why he was still receiving benefit checks, and the SSA again told him that his case would be reviewed in a year. The benefit checks kept coming.

On May 3, 2011, the SSA issued a notice informing Rogman that "[t]he local Social Security office told [the SSA Office of Cental Operations] that you worked and earned too mucy [sic] money" and that it had overpaid him $32,176.90 (later reduced to $30,928.90 (Tr. 60-62)) in benefits from May 2009 through April 2011. The notice stated that Rogman should "refund this overpayment within 30 days." The SSA also alerted Rogman that he could make partial payments, or he could file an appeal asking

maintained in the Clerk of Court's office.

the SSA to waive collection of the overpayment if "[i]t was not [Rogman's] fault that [he] got too much Social Security money" *and* returning the overpayment to the SSA "would mean [Rogman] cannot pay [his] bills for food, clothing, housing, medical care, or other necessary expenses, or it would be unfair for some other reason." (Tr. 53-54, 514.)

While he did not contest the fact or amount of the overpayment, Rogman requested waiver of recovery of the overpayment on May 26, 2011, because he alleged he was not at fault. (Tr. 63-82, 514.)

### B. The Administrative Hearing

The Administrative Law Judge ("ALJ") held a hearing on Rogman's request on May 29, 2012, at which Rogman was represented by an attorney. (Tr. 163-68, 514, 911-48.) At the hearing, Rogman testified about the monthly amounts he earned from February 2010 to March 2011 and stated that when he returned to work, he notified the SSA by telephone and made several subsequent telephone calls to alert the SSA regarding his work schedule and employers. Rogman testified that each time he made such a telephone call, the SSA told him that he would continue to receive disability benefits and that the SSA would review his case on a yearly basis. (Tr. 921-22.)

Rogman testified that during the time period in which he allegedly called the SSA several times to report his earnings and to ask why he was still receiving benefit checks, the SSA sent him "papers." (Tr. 923). "[T]hey'd send me these papers, and I'd fill them out, and . . . sent them into them." (Tr. 923.) When the ALJ asked Rogman whether he had copies of the papers he sent to the SSA, he replied, "I think I did have some of them in, in the big file boxes at [my attorney's] office." (Tr. 923.) The ALJ stated that it "would be useful if you had a copy of what you sent Social Security." (Tr. 923.) Rogman's attorney told the ALJ that "[Rogman] has such a large file, I didn't bring everything here" and that "we'll get in the requested information by the end of this week. He has a . . . voluminous file at my office, but

3

we can sort through it today . . . ." (Tr. 924 & 928.) At the conclusion of the hearing, the ALJ stated, "We'll look forward to getting that information."[3] (Tr. 928.) The hearing occurred on Tuesday, May 29, 2012, and the ALJ gave Rogman until Friday, June 1, 2012, to submit the information. (Tr. 921.) Rogman failed to do so.

**C. The ALJ's Opinion**

The ALJ determined on June 15, 2012, (Tr. 511-19) that there was no basis for the SSA to waive the overpayment and that Rogman was liable for repayment of $30,928.90 he received during the period from May 2009 through March 2011. (Tr. 518-19.) The ALJ found that after exhausting his "trial work period"[4] and the subsequent "reentitlement period"[5] in which a benefit recipient is allowed to continue receiving benefits despite working, Rogman engaged in substantial and gainful work activity such that he was not entitled to benefits during that period. (Tr. 515.) The ALJ noted that an overpayment in Rogman's case "occurred because the claimant's work activity was not discovered by the Administration until approximately August 2010, which resulted in an investigative review completed in March 2011." (Tr. 516.)

Besides finding that Rogman was liable for $30,928.90 in overpaid benefits, the ALJ also concluded that Rogman was "at fault in causing the overpayment." (Tr. 517.) The ALJ acknowledged Rogman's testimony that "he both called and mailed information to the Social Security Administration on a number of occasions specifically regarding his work activity"; "that he first reported to the [SSA] that he

---

[3] The ALJ also requested that Rogman submit evidence of his gross wages for June 2009 and any evidence necessary to "prove different figures" than those calculated by the SSA regarding Rogman's wages from May 2009 to April 2011. (Tr. 917-921.)

[4] [20 C.F.R. § 404.1592](#).

[5] [20 C.F.R. § 404.1592a](#).

4

had returned to work in June 2008 when he called the '1-800' number"; "that he called again in July or September 2009 and again sometime in 2010"; and that "in each instance, he called to report his full-time work and to ask why he was still receiving benefit checks, to which he was told—without exception—that he was due the money he was being paid and that he would be reviewed at the end of the year."

The ALJ also recounted Rogman's testimony that he "completed forms received from the [SSA] and mailed them back," but noted that only one of those forms was presented at the hearing, and despite Rogman's attorney's promise to provide the ALJ with such forms "by the end of this week," he did not do so. To the contrary, the ALJ stated: "No documentation of proof of contact with the Administration prior to May 2011 was provided." (Tr. 517-18 & 928.)

The ALJ then discounted Rogman's credibility regarding his alleged contact with the SSA prior to the May 3, 2011, notice of overpayment:

> Contrary to the claimant's statements, the [SSA] has no record of the claimant having contacted them, regarding work, until May 2011 when he responded to letters informing him of the overpayment. There is no record of either phone or mail correspondence having been received from the claimant and he has not provided any copies of the alleged forms he completed or other contact information subsequent to the date of hearing. . . .
>
> The undersigned cannot rely solely on the allegations of the claimant, which are not backed by sufficient evidence to support his claims. . . .
>
> . . . the record reflects that the claimant was informed of his reporting responsibilities and was aware of the fact that work affected his eligibility to benefits. He continued to receive payment, but there is no evidence provided to corroborate his claim that he contacted the Administration on any occasions prior to May 2011. Furthermore, though it certainly would not be outside the realm of possibility, it is highly unlikely that employees of the Administration to misinformed

5

[sic] the claimant with information patently incorrect, as he alleges, and to have done so blatantly and repeatedly—especially with the claimant presumably having contacted different representatives each time he called (prior to May 2011).

. . . .

. . . In addition, there is no reason to believe that the claimant's age, intelligence, physical, mental or linguistic capabilities were at any time compromised such that he would have been incapable of understanding his reporting responsibilities.

(Tr. 518.)

The Appeals Council denied Rogman's request for review of the ALJ's decision on March 10, 2014, making the ALJ's decision the final decision of the Commissioner. (Tr. 540.) Rogman filed an appeal in this court on May 15, 2014.[6] (Filing 1.)

---

[6]On August 19, 2014, Rogman was ordered to show cause by September 2, 2014, why this matter should not be dismissed because he had taken no action to serve summons on the SSA after filing this appeal. (Filing 3.) Summons was issued on August 21, 2014, and served the next day. (Filings 5 & 6.) After filing a motion for extension of time to answer Rogman's complaint, defendant SSA moved to remand to the Appeals Council on November 20, 2014, "because the agency cannot locate the claims file supporting the Administrative Law Judge's (ALJ's) June 15, 2012, decision in Plaintiff's case, or the recording of the administrative hearing held on May 29, 2012. Remand is appropriate in view of the incomplete administrative record. Upon receipt of the Court's remand order, the Appeals Council will remand the case to an ALJ for reconstruction of the administrative record. The ALJ will hold a new hearing, and issue a new decision on Plaintiff's claim." (Filings 7 & 9.) The government's motion was granted (Filing 10), but the case was reopened in this court on January 8, 2015, (Filing 12) after the SSA located the lost claim file. (Filing 11.)

## II. ISSUE ON APPEAL

Plaintiff Rogman argues that the "ALJ did not apply the proper legal standard in determining Mr. Rogman's credibility and denying his waiver request." (Filing 19 at CM/ECF p. 9.) Rogman asks this court to reverse the ALJ's order and remand with directions to grant the waiver of recovery of the overpayment or to reevaluate Rogman's credibility using the proper standard. (Filing 19 at CM/ECF pp. 9-10.)

## III. DISCUSSION

The court may reverse the Commissioner's findings only if they are not supported by substantial evidence or result from an error of law. *See Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012) (citing 42 U.S.C. §405(g)). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. In determining whether evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. If substantial evidence supports the Commissioner's conclusion, the court may not reverse merely because substantial evidence also supports the contrary outcome and even if the court would have reached a different conclusion. *Id.*

An ALJ's adverse credibility finding must also be supported by substantial evidence and "reasonable inferences" therefrom. *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008). The court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006) (internal quotation marks and citation omitted). The district court "does not reweigh evidence or the credibility of witnesses or revisit issues de novo" *Sipp v. Astrue*, No. 4:08CV84, 2010 WL 3039175, at *5 (D. Neb. Aug. 2, 2010), *aff'd*, 641 F.3d 975 (8th Cir. 2011).

Whenever the Commissioner determines that an individual has received an overpayment of benefits, "proper adjustment or recovery shall be made." 42 U.S.C. § 404(a)(1). However, the Commissioner may not recover an overpayment of benefits "from[ ] any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." *Id*. § 404(b).[7] *Rodysill v. Colvin*, 745 F.3d 947, 949 (8th Cir. 2014); *Sipp v. Astrue*, 641 F.3d 975, 981 (8th Cir. 2011). Because the ALJ in this case determined that Rogman was not "without fault," the ALJ properly did not analyze whether the SSA's recovery of the overpayment would defeat the purpose of Title II or be "against equity and good conscience."

Although the SSA may be at fault in making an overpayment, "that fact does not relieve the overpaid individual . . . from liability for repayment if such individual is not without fault." 20 C.F.R. § 404.507. The "without fault" inquiry focuses on what the recipient himself should have known, and the claimant has the burden to prove he is without fault. *Coulston v. Apfel*, 224 F.3d 897, 899-900 (8th Cir. 2000) (citing 20 C.F.R. § 404.507). In determining fault, the ALJ is required to take into account "all pertinent circumstances," including the individual's age, intelligence, and physical, mental, educational, or linguistic limitations. *Id.* at 898 (citing 42 U.S.C. § 404(b)). "What constitutes fault . . . depends upon whether the facts show that the incorrect payment . . . resulted from (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or (b) Failure to furnish information which he knew or should have known to be material; or (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect." 20 C.F.R. § 404.507.

---

[7]This language has been amended by the Bipartisan Budget Act of 2015 in a way that does not impact this case. In any event, the amendment applies only to determinations made on or after the date that is three months after the date of the enactment of this section, which was November 2, 2015. *See* Pub. L. No. 114-74, 129 Stat. 584 (Nov. 2, 2015) (see section entitled <<42 USCA § 404 NOTE>>).

The plaintiff here relies on the regulations that provide that an individual will be deemed to be "without fault" and automatically entitled to waiver of recovery of an overpayment if he accepts an overpayment in reliance on incorrect information from the SSA:

> A benefit payment under title II . . . of the Act to . . . an individual who fails to meet one or more requirements for entitlement to such payment . . . constitutes an entitlement overpayment. Where an individual . . . accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration . . . with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto, . . . such individual, in accepting such overpayment, will be deemed to be without fault.

20 C.F.R. § 404.510a; *see also id.* § 404.512(a) ("In the situation[] described in . . . [§ ] 404.510a, adjustment or recovery will be waived since it will be deemed such adjustment or recovery is against equity and good conscience."); *Gladden v. Callahan,* 139 F.3d 1219, 1223 (8th Cir. 1998) ("someone who relies on erroneous information from an official source meets both requirements for waiver set forth in 42 U.S.C. § 404(b): he or she is without fault, and recovery would be against equity and good conscience").

In this case, the ALJ determined that the overpayment was caused by the fact that Rogman's work from May 2009 through March 2011 "went unreported," thereby creating an "untimely delay in processing a review of the claimant's work activity as it related to eligibility and entitlement to disability benefits." (Tr. 514 & 517.) In requesting a waiver of recovery of the overpayment, it was Rogman's burden to prove that he was without fault in causing the overpayment. While Rogman testified that he called the SSA on numerous occasions about his work and salary between 2009 and 2011, and that he "completed forms received from the [SSA] and mailed them back," he failed to provide copies of those forms—despite being given an additional three days following the hearing to do so—or any notes, phone records, mail

9

correspondence, or affidavits from Rogman's wife or other witnesses who could corroborate Rogman's alleged contacts with the SSA office.

The evidence before the ALJ regarding Rogman's level of fault consisted only of his unsupported testimony that he contacted the SSA regarding his work and relied on the SSA's supposed statements that Rogman was due the money he was being paid and that his case would be reviewed at the end of the year. At the hearing on Rogman's request for waiver of recovery of the overpayment, both Rogman and his lawyer made affirmative representations that corroborating documentation existed "in the big file boxes at [my attorney's] office," but no such documentation was ever submitted for the ALJ's consideration:

> [T]he [SSA] has no record of the claimant having contacted them, regarding work, until May 2011 when he responded to letters informing him of the overpayment. There is no record of either phone or mail correspondence having been received from the claimant and he has not provided any copies of the alleged forms he completed or other contact information subsequent to the date of hearing. . . . He continued to receive payment, but there is no evidence provided to corroborate his claim that he contacted the Administration on any occasions prior to May 2011."

(Tr. 518.)

Without such corroborating information, the ALJ reasonably questioned Rogman's credibility regarding his claim that he relied on erroneous information from the SSA in continuing to accept benefit checks to which he was not entitled. *See* Rodysill, 745 F.3d at 953 ("[The plaintiff's] mere receipt of disability benefits after notifying the Commissioner of his work activity does not satisfy § 404.510a."); *Hooey v. Astrue*, No. 11-CV-2805, 2012 WL 5830402, at *5-6 (D. Minn. Oct. 12, 2012), *report and recommendation adopted*, No. 11-CV-2805, 2012 WL 5833271 (D. Minn. Nov. 16, 2012) (denying plaintiff's motion for summary judgment in appeal from ALJ's decision that plaintiff was not without fault for benefit overpayments where

10

"there [was] no evidence, other than Plaintiff's own testimony, to prove that Plaintiff contacted the Commissioner any time before . . . he was informed that he had been overpaid benefits. . . . Plaintiff was unable to provide the dates of his visits to the Agency, the names of the individuals he spoke to, or copies of the paperwork provided"); *Sipp*, 2010 WL 3039175, at *8 (affirming Commissioner's decision that claimant was not "without fault" in causing overpayment and noting that claimant's "testimony that she reported employment by telephone is uncorroborated by notes or other evidence. Even assuming that she reported her employment telephonically, there is no indication that telephonic communication satisfies the SSA's requirements"); *Lang v. Astrue*, No. CIVA 08-5880, 2009 WL 3711545, at *9-10 (D. Minn. Nov. 3, 2009) (reversing Commissioner's decision that claimant was "at fault" for overpayment because ALJ placed "undue weight on Plaintiff's inability to recall the names and dates related to her contacts with the SSA"; while plaintiff's lack of specificity may affect the weight of her testimony, other evidence in the record corroborated her alleged contacts with the SSA—testimony from her husband, a written note by plaintiff following her contact with the SSA, and an affidavit from husband's boss who recounted husband telling him of wife's contacts with the SSA and their reliance on the SSA's representations); *see also Chavez v. Comm'r of Soc. Sec.*, No. 1:14-CV-532, 2015 WL 1730371, at *4 (S.D. Ohio Apr. 14, 2015), *report and recommendation adopted sub nom. Chavez v. Comm'r of Soc. Sec.*, No. 1:14CV532, 2015 WL 4540138 (S.D. Ohio July 27, 2015), *appeal filed*, *Chavez v. Comm'r of Soc. Sec.*, No. 15-4022 (6th Cir. Sept. 21, 2015) (affirming ALJ's decision that plaintiff was at fault in receiving overpaid benefits when "there [was] no evidence in the record supporting [plaintiff's] testimony" that he called the SSA to report his earnings); *Nnakwe v. Astrue*, No. 11-CV-2415, 2012 WL 3061505 (E.D.N.Y. July 26, 2012) (affirming ALJ's decision that plaintiff was at fault in accepting overpayment from SSA despite plaintiff's claim that she notified SSA when she returned to work because "[b]eyond Plaintiff's hearing testimony, . . . there is no evidence to support this view"); *Craft v. Astrue*, No. 07-10824, 2008 WL 2622961 (E.D. Mich. July 2, 2008) (affirming Commissioner's decision that plaintiff was at fault in accepting SSA overpayment when plaintiff testified that she repeatedly reported work activity to SSA

11

via telephone, personal visits to SSA office, and mailing forms to SSA, but plaintiff failed to file relevant evidence supporting her testimony within additional time ALJ gave plaintiff to submit corroborating evidence).

In the absence of supported, and therefore credible, testimony from the plaintiff about his alleged contacts with the SSA regarding his work activity during the relevant time period, the ALJ reasonably concluded that the plaintiff was "at fault" under 20 C.F.R. § 404.507 for either failing to furnish information which he knew or should have known to be material or for accepting payments he either knew or could have been expected to know were incorrect.

## IV. CONCLUSION

I conclude that substantial evidence supports the Commissioner's decision to deny waiver of recovery of the overpayment to Rogman because the fact and amount of the overpayment are not contested; the fact that the SSA may have been at fault in making the overpayment to Rogman does not relieve him from being liable for repayment if he "is not without fault," 20 C.F.R. § 404.507; Rogman's failure to furnish information to the SSA which he knew or should have known to be material, or his acceptance of SSA payments which he either knew or could have been expected to know were incorrect constitute fault under 20 C.F.R. § 404.507[8]; and Rogman

---

[8]Although not raised by Rogman's counsel, I note that in the ALJ's discussion regarding Rogman's fault in causing the overpayment, the ALJ erroneously referenced regulatory standards of fault for both "deduction overpayment" cases, 20 C.F.R. §§ 404.510 & 404.511, *and* "entitlement overpayment" cases, 20 C.F.R. § 404.510a, and the test of fault in each type of overpayment is distinct. (Tr. 517-519.) *See Tomic v. Sullivan*, No. 89 C 2054, 1992 WL 43241, at n.8 (N.D. Ill. Mar. 2, 1992) (describing standard of fault for entitlement overpayments as either making false statement which claimant knew or should have known to be incorrect, failing to provide information known to be material, or accepting payment that claimant either knew or could have been expected to know was incorrect, 20 C.F.R. § 404.507, and standard of fault for deduction overpayments as claimant's lack of good faith or failure to exercise high

failed to satisfy his burden of proving lack of fault such that he could be excused from reimbursing the SSA for the overpayment. Accordingly, the recovery of the SSA's $30,928.90 overpayment to the plaintiff during the period from May 2009 to March 2011 shall not be waived, and Rogman is liable for repayment of such amount.[9]

IT IS ORDERED:

1. The decision of the Commissioner of Social Security is affirmed pursuant to sentence four of 42 U.S.C. § 405(g);

---

degree of care in determining whether circumstances which may cause deductions from benefits should be brought to SSA's attention, 20 C.F.R. § 404.511); 2A Soc. Sec. Law & Prac. § 33:79 ("The rule that a claimant who fails to exercise a high degree of care may be found at fault, applicable to the creation of a deduction overpayment, does not apply to entitlement overpayments, which involve basic eligibility for benefits."). However, the ALJ's error in this regard is inconsequential because Rogman failed to meet his burden of proof on the lesser entitlement-overpayment standard, which means he necessarily failed to meet the more stringent deduction-overpayment standard of fault.

[9]In affirming the ALJ's opinion, I do not rely on the ALJ's supposition that "it is highly unlikely that employees of the Administration . . . misinformed the claimant with information patently incorrect, . . . especially with the claimant presumably having contacted different representatives each time he called . . . ." (Tr. 518.) "An ALJ's decision on a request for a waiver of overpayment must be based purely on the evidence in the record." 30 Fed. Proc., L. Ed. § 71:417 (Westlaw 2015). *See, e.g.*, *Willcockson v. Astrue*, 540 F.3d 878, 881 (8th Cir. 2008) (case remanded, among other reasons, to clarify ALJ's analysis of claimant's credibility regarding pain; ALJ stated that "the severity of the claimant's symptoms is disproportionate in comparison to the usual expected severity of her condition," which court viewed as an unsupported medical opinion which the ALJ was not qualified to give; ALJ must rely on evidence in the record to make such conclusions, and court was "unsure . . . what evidence the ALJ relied on to make these statements").

13

2. Recovery of the Social Security Administration's overpayment to the plaintiff in the amount of $30,928.90 during the period from May 2009 to March 2011 shall not be waived, and the plaintiff is liable for repayment of such amount; and

3. Final judgment will be entered by separate document.

DATED this 9th day of December, 2015.

BY THE COURT:
s/ *Richard G. Kopf*
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.